Good afternoon, Your Honor. I represent the appellant, Gregory George, and I'm going to request four minutes for rebuttal time. May it please the court. Your Honor, the district judge, district court judge, trial court judge, Judge Finch, improperly considered a motion to consider Chief Judge Lewis' order excluding videotape evidence on the morning of trial when the government failed to raise it for several months and failed to raise it at the pre-trial conference that Mr. George specifically requested in this case. You did get a letter from the government, didn't you, several weeks in advance, or if not months in advance, telling you of their intention to use that videotape? Yes, Your Honor. The facts were that Chief Judge Lewis entered order July 8th excluding the videotape evidence. But wasn't that, Mr. Drew, but it wasn't excluded on the basis that it had just been provided to defense counsel, and hence the reconsideration, if you will, of the motion was about six months later after you, not you, but defense counsel had had the videotape for about six months, so there was a change in circumstances? Well, Your Honor, I think the change in circumstance, to answer your question, yes, there was a change in circumstances with regard to exactly what you said. It wasn't a change in circumstances from the pre-trial conference, and I think that's critical in how the court views whether or not the government has met its burden in this case of showing that there was a change in circumstances as to when this particular evidence was provided. When this particular issue was presented to the court, and this is why I think Rule 17.1 and Rule 16 have to work hand in hand to give litigants a fair shot of not being ambushed on the day of trial. Let me go back, since you raised this ambush point. The government's letter, if I'm not mistaken, is dated November the 6th. Yes, Your Honor. 2014. Yes, Your Honor. The trial is January the 7th. Yes, Your Honor. 2015. Yes, Your Honor. You had notice of at least two months. We had notice. The government's intention to use the video in its case in chief. We had notice that the government intended to introduce evidence that had been excluded by the court. The court had excluded that evidence by a pre-trial ruling, and that pre-trial ruling was the law of the case. That's the whole point of Rule 16 rulings, and that's the whole point of having a pre-trial conference. Eleven days after that letter was sent to Mr. George's counsel, myself, Mr. George specifically asked for a pre-trial conference in this case. Asked for it twice, and it was granted twice, and the pre-trial conference kept getting moved back. But nevertheless, he still was giving a pre-trial conference. So the government can't say that, well, we're going to do something that is contrary to a district court ruling, and that's contrary to a pre-trial ruling. I'm sorry, Your Honor. Is it the case, sir, that if you said the government failed to mention it at the pre-trial conference, which is the day before trial? Yes, Your Honor. Is it the case that if you had gotten the video that day, that you would have been prepared to go? Your Honor, I believe so. I think that at the very least, you would have had – certainly, counsel would not have left his pre-trial preparation the same way he would have left his pre-trial preparation. So in that one day, you would have been prepared to confront the video? Your Honor, I can't – I guess I can't backtrack and say that that would have been the decision to be made. Certainly, it would have given Mr. George the opportunity to either refrain from saying certain things or to alter his trial strategy in certain ways. But the fact of the matter is the day before trial, Mr. George was operating – and his counsel were operating under the impression that he was going to trial without a video. Let me ask you one more question regarding the use of the video. How prejudicial was – could this video have been given the actual testimony that was presented at the trial concerning your client's cell block and what appeared to be, apparently, a cell phone in the cell block that was plugged into an outlet? What difference does the video make? I think it makes a difference in terms – specifically for the Schenken, specifically for the – Mr. George's theory at trial. Mr. George's theory at trial went directly to not only did he have access to that cell, but that other people have access to that cell. How does the video change that? Well, I think that – I think that the video – I think the video gives the government – gave the government an advantage with regard to showing the actual placement of where everything was in the cell. But the issue – And – The issue is not smuggling. The issue is possession. So if he had access to it – if you're conceding he had access to it, what are we talking about? Well, there's still the issue of whether or not he had knowledge. And so the question is the government's – the government is honing in on the fact of excluding him as – so yes, the issue is not – it's not a smuggling case, but it is a question of knowing possession. And whether or not the government wants – the government, in trying to meet their high burden of proof, whether or not they can exclude, as much as they can, Mr. George as being the only one who could have placed this – at the very least, this Schenken, and even while he's sleeping, this cell phone in this cell, and whether or not he would therefore have knowledge of it being in there. So Mr. George's defense in this case is that, look, this is not your typical prison. We want to show – and this is going to get into the other issues that I raised on appeal. We want to show that rules are not being followed, doors are open, inmates are places where they shouldn't be, and guards are not following rules. Why no contemporaneous objection to this video at trial? And because there was no contemporaneous objection, was it waived? No, Your Honor, I think that counsel raised the objection – At trial? No, not at trial. Just like counsel would not have to raise an additional objection after a pretrial ruling is made and a motion is suppressed, counsel raised the – counsel was in fact the one who was the driving force of following things. This is a government that never even filed anything, Your Honor. It was counsel who filed the motion to exclude it. It was counsel who received the order from the district judge. It was counsel who then set a pretrial conference in this case and asked the government to raise any issues that they wanted to raise. And then the government turns around and says that we waived it, they waived it. I understand your position is you preserve the objection with the pretrial litigation. Certainly. We agree with you that the video should have been suppressed. I mean, isn't there other evidence of live testimony concerning a lockdown of the cell three hours before the inspection was made, at which point the torture bed was found? Well, there is testimony, interestingly enough, that this was the rule of the facility, is to – all the doors have to be locked at 9 o'clock, and this search takes place at 12.50 in the morning. But in fact, there are doors – there's even testimony from the government's witness that the doors are open. These two doors are open that he particularly knew of. And then this was raised in the direct examination of Officer Joseph, that the court did not allow defense counsel to talk about how these rules are not followed. And that's – that gets to the second and third issue in the case. And then when Officer Joseph was cross-examined, and this goes to the issue of the hearsay, the third issue that counsel raised in its brief, that we raised in our brief, that when you're talking about the fact that – the fact that this district court specifically asked the question to Officer Joseph, how do you know that Mr. George was assigned to this cell? And he says, I read it on a countersheet. Would that be a business record or not? We don't know, because the government never – nobody tried to enter it as a business record. The countersheet was never produced. And I think the government concedes it was hearsay, because in their brief, they don't argue that it wasn't hearsay. They just argue that it was harmless error. Is there any dispute that this was – this was his cell or not? Well, I think there's a dispute as to whether or not anyone else was assigned to the cell. He was sleeping in the cell when the contraband was found. He was in the cell. I shouldn't say sleeping, but he was in the cell. And counsel wasn't able to ask Officer Joseph any questions about the practices of other inmates going into other cells, and as well as other – whose responsibility – well, I'm sorry – in terms of other people bringing in contraband into the facility. He was – Mr. George was cut off from exploring those areas, even though the government on direct examination was able to establish that these are the rules of the institution, as if these are the rules that are followed. So what – go ahead. What evidentiary point were you hoping to establish that you weren't able to argue to the jury, so to speak? What's the prejudice here? The prejudice is that Mr. – that Mr. George was not able to elaborate – get more information from this witness who had – who would have direct knowledge of the practices that were in the jail of other people, other inmates being in other cells, of jail cell doors being unlocked, and of guards bringing in contraband. Was it your position that you were precluded altogether from making this argument, or just not – you didn't get as much information as you would like to have? There was some – there was some cross-examination on that, but counsel was cut off, I believe – the record would show counsel was cut off fairly quickly in that. For all of those reasons, Your Honor, we would ask that the court would vacate the conviction and order a new trial. Thank you, sir. We'll get you back on rebuttal. Mr. White? Good afternoon, Your Honors. David White for the United States. May it please the court. Mr. White, go ahead. Your Honors, with respect to the first issue that my opposing counsel raised with the admission of the tape, the district court properly admitted the tape, and for reasons that I think that the court has adverted to when speaking to opposing counsel. There are certain facts that cannot – that just cannot be escaped here. But he does make a good point, though, that there was an outstanding order that rejected admission of the tape. Your Honor, that's – That order was apparently never revisited. Your Honor, that's true. On January – excuse me, on the July 8th, the district court did enter an order stating that the government acquiesced in not using the tape in its case in chief. That order was entered in anticipation of the trial starting a week later, the 15th. The trial actually got continued for six months, so circumstances had changed materially by the time the order was entered and the time the case actually went to trial. Why didn't the government ask for reconsideration, formal reconsideration of that order? Well, Your Honor, actually, the government did at the day of trial. Well, the day of trial. That's correct, Your Honor. So the government did bring that up. It is true that the government did not bring that up at a pretrial conference. It is equally true that Mr. George did not bring that up at the pretrial conference either. Well, I'm assuming Mr. George is operating under the assumption that the previous order was still in place. Well, Your Honor, the response to that is on November the 6th, the United States sent a letter to Mr. George stating that that was notice that the government intended to introduce the tape in its case in chief. So two months prior to the trial date, the United States had already so advised Mr. George. And there was no dispute that Mr. George had possession of the tape from when the government produced it on July the 3rd. He had it for six months. So when you did produce that letter, there was still a court order in place saying you can't use the video, right? That's correct, Your Honor. And then the day of trial, the United States raised the issue again. And at that point, if Mr. George still has objected and he never stated that he incurred prejudice, he could ask for a continuance. I mean, if indeed the tape were going to materially prejudice some defense that he had, he could have asked for a continuance. But there's no evidence in the record that a continuance was ever sought. And there's no record in the evidence that any prejudice was ever shown and demonstrated. And there's no record in the evidence – there's no evidence in the record that Mr. George not actually possessed the tape six months prior to trial, nor that he did – was not in receipt of the November 6th letter from the United States advising him of its intent to use the tape. Did you say that Mr. George had the tape several weeks before or months before the trial, the actual trial? Your Honor, the United States produced that tape on July the 3rd. And that's according to the court's order in the United States' acquiescence. And the trial – that was July the 3rd of 2013. The trial commenced January 7th, 2014. I wonder if this is – Does the fact – excuse me – does the fact that the jury asked to see the video during deliberations indicate that its admission was highly prejudicial? No, Your Honor, the United States does not believe that it does. If for no other reason, the tape was also narrated by live testimony. So the tape is certainly a very good visual aid for jurors who prefer to see things. But the tape was essentially narrated by the testimony of the officers. And, Your Honor, who knows why a jury may want to have seen this. The point is a rational jury could have concluded that that cell was occupied by Mr. George. So I think it would just be speculation as to how prejudicial or material the tape actually was to the jury's verdict, Your Honor. I would like to address the second and third issues. Let me go to the third issue for a minute. Yes, Your Honor. The issue is I understand that the government called a witness who had no personal knowledge of who was in and out of that cell. Is that right? That's correct, Your Honor. That would be the countersheet. That would be Officer Joseph who testified regarding the countersheet. So isn't it incumbent on the government to make sure a witness is qualified to testify before they get on the witness stand and offer testimony? Your Honor, yes. I mean, I think that the government probably could have elicited testimony such that the countersheet could have been entered as a business record. That's not what happened here. No, that's correct, Your Honor. I'm in some trouble by the fact that the government called a witness knowing that they were not in a position to testify and the judge had to ask the question as to how do you know this. Well, Your Honor, I think the government believes that at the end of the day it's either here or there because that countersheet was kind of weak evidence to begin with and there was other evidence to establish what the counters, what the offensive hearsay language would have been from the countersheet. For example. The government called this witness. That's true, Your Honor. The government did call that witness. But the record doesn't reveal why that witness was not put through the questions of trying to get this document in through 8036 or 8038. I'm sorry, Your Honor. I don't know the answer for that. It's not in the record. But again, at the end of the day, it's not particularly relevant here and any admission would have been harmless error because independent evidence established that cell did belong to Mr. George, which is what the offensive language of the hearsay statement would have been, namely that Officer Smith at pages 122 of the record stated that, yes, Mr. George was the sole occupant of that cell. He stated at 123 of the record he actually saw him in that cell. So there was other independent evidence establishing what the countersheet would have done. So ultimately, assuming that it was indeed hearsay and that it was indeed erroneous to admit it, the error would have been harmless because it was independently established. Well, it was hearsay. Or was it not hearsay? No, Your Honor. It was hearsay. Admissible hearsay? Your Honor, again, had the document, I think the United States, and I don't know why, again, I don't know why. Your Honor, I just said it was a recording of regularly recorded activities. That's correct, Your Honor, which I would assume that it had... Different officers make different notes as to when somebody's in the cell and so forth. That's my understanding of it. That's correct, Your Honor. And I think that it probably could have come in under either 8036 or 8038. It could have, but it didn't happen that way. No, you're absolutely correct. The way it was presented is inadmissible hearsay. That's correct, Your Honor. Tell me about the... I'm trying to figure out the importance of this video. What are the dimensions of this cell? Your Honor, I actually don't know. The video itself was roughly eight to ten minutes in length. You don't know how big the cell is? I mean, there are two beds in the cell. Yes, Your Honor, there are two beds in the cell. There are two bunks, and Mr. George occupied the bottom bunk. The top bunk was used for storage. As far as what the video does depict, it depicts a cell. There was the stationary table that was next to the beds where the phone and the charger were. There is what looks to me like a desk area with books and personal effects and papers. There is a little sink and toilet area. I'm not overly conversant in the interior of cells, but it looked to me like a rather standard prison cell. That's what the video does depict. Again, it was roughly eight to ten minutes in length. The trial judge curtailed the examination by a defense counsel of anyone possibly having access to the cell, that is, somebody else that might have brought the contraband into the cell. Why wasn't that prejudicial? Well, actually, Your Honor, there was a fair— Mr. George's counsel actually did get to question and ask many questions regarding some of the— what he claims now is the truncated cross-examination. For example, he got to ask, Officer George, did you have a cell phone? He got to ask, were the rules regularly followed? Were other doors open? Was that the only door that was locked, the implication being that prisoners had access? You say he got to ask like it's some sort of privilege. I mean, this was his theory of defense. No, Your Honor. I didn't mean to imply that it was a privilege, but he actually did get to ask questions. He also asked questions of Officer Joseph about, well, what other guards— are the guards searched when they come in? Yes, they are searched. Are the guards allowed to have their cell phones? No, they are not. Did they have their cell phones? No, they did not. Did they have personal cell phones? No, they did not. Did they have work cell phones? No, they did not. So, Mr. George actually did get to question the witness about his knowledge about bringing contraband in from the outside, about doors being locked, about rules being followed. And the district court also says, also advised Mr. George, if you can establish that this witness was a supervisor, I will let you probe further regarding the following of the rules. So, the government's position is that Mr. George actually did get to ask a lot of probing questions that would have shown any motivation for bias or the motivation to testify on behalf of that particular witness. So, the government does not believe that the cross-examination, that any limitation on cross-examination was an abuse of discretion or did violate Mr. George's Confrontation Clause's rights under the Constitution. But back to the issue of the questions that were asked, I think the record does establish, starting at pages 96, 97, 98, 103, 104, 105, the numerous questions that were asked. And indeed, Mr. George was able to, I think, impeach the witness and demonstrate that his case, he was able to put out a plausible theory there. So, the government does not believe, as I stated, that there was any improper limitation on that. Certainly, it came within the district court's discretion to control testimony and prevent irrelevant matters. And here, what's important is the possession. This was not a smuggling case. So, asking questions about what a lot of other people are bringing in or guards or prisoners, inmates coming in and out of other cells could have easily confused the jury. It wasn't particularly relevant. It really didn't go to the possession, which is what this case is about, which is the counts charged. Anything else, Mr. White? Your Honor, I'm happy to answer questions, but the government has no further argument at this time. Thank you, Mr. White. Thank you, sir. Yes, Your Honors. Mr. Jupiter? I thought you might address this, Mr. Jupiter. I have a note that there was either a text to or from your client on that cell phone. Yes, Your Honor. That was evidence that was offered by the government's witness, Jeremy Latchman. Doesn't that substantiate that he was aware that phone was in his cell? I think that's evidence that the government, on that particular count with regard to the cell phone, that's evidence obviously that's favorable to the government. I don't think that that... You don't think it's damning to your client? No, Your Honor. I think that this is exactly the type of evidence, along with the other evidence the government admitted during trial, that obviously the jury, because even with that evidence, the jury still asked to see the videotape. They didn't ask to, let's see that text message again. They asked to see the videotape again before they reached a verdict. So I think that's the main point that shows that this was obviously prejudicial. Let me ask you about your third issue, the issue with respect to the count sheet. Why wasn't that litigated pre-trial? Why wasn't a motion to eliminate filed as soon as you found out that this individual was going to testify to determine whether or not he or she did or did not have personal knowledge? Well, I don't think that, I'm not sure that the government, there was no indication that the government was going to have a witness testify as to the assignment of this cell, or that the government, there was certainly not going to be any testimony. It was a question that was elicited by the district court himself, in terms of how he knows that Mr. George was assigned to it. So there was no advance notice. The government didn't attempt to, they didn't have that in their pre-trial documents. They didn't even produce it at trial. And so you basically had an invisible witness that Mr. George is not able to cross-examine who made the statement in the sheet. And Mr. George, for that matter, is not even able to look at the sheet. The sheet has not been produced to this day. So it was very unfair for him to have to deal with that at trial and not be able to cross-examine or to establish anything. And particularly when the district court said, this is what you can question him on, and it was the district court who elicited the hearsay in the first place. And then the district court erroneously said, well, it can't be hearsay because it was on a counter sheet. The officer testified. Is it really hearsay? Yes. Is it really hearsay? Yes. The question was, what's the basis for your belief that this was his cell, essentially? And he said it was what he read on the counter sheet. It's not being offered to prove the truth of the matter, that is, that that was his cell. It's being asked to state what the basis of his knowledge is. I think when the district court asked it in the sense of how did you know, and when the information came in, the officer says that he saw this on a counter sheet, I think that that information is given to the jury for the purposes of proving that, in fact, he was assigned to that cell. So I think it is coming in. I don't see how the jury could not consider it for the purpose of determining whether or not Mr. George was the person assigned to that cell. So for those reasons, I do believe it was. It did come in for the truth of the matter asserted. It was hearsay. And Mr. George was not able to confront the witness who made that statement. And for those reasons, we ask that the court vacate the conviction. Thank you, Your Honor. Thank you very much. Thank you, counsel. Both were a well-argued case, and we'll take the matter under advisement, and we'll move on.